Filed 5/16/23  In re N.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.S., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.F.,<br><br>Defendant and Appellant. | F085075<br><br>(Super. Ct. No. JD142974-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Detjen, J. and Snauffer, J.

C.F. (mother) appeals from the juvenile court's order terminating her parental rights to her now one-year-old son, N.S., pursuant to Welfare and Institutions Code section 366.26.[1] Her sole contention on appeal is that the Kern County Department of Human Services (the department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because extended family members were not asked about N.S.'s Indian ancestry.[2] The department concedes the error, which we accept.

As we discuss more fully below, we review a juvenile court's ICWA findings under a hybrid substantial evidence/abuse of discretion standard, reviewing for substantial evidence whether there is reason to know a child is an Indian child, and for abuse of discretion a juvenile court's finding that a department exercised due diligence and conducted a "proper and adequate" ICWA inquiry. Further, we will reverse only on a showing that any ICWA error was prejudicial. Applying this standard, we conclude there is not substantial evidence in the record to support the juvenile court's finding that the child is not an Indian child, and the juvenile court abused its discretion by concluding that the department exercised due diligence and conducted an adequate ICWA inquiry. We further conclude the juvenile court's ICWA error was prejudicial, conditionally reverse the juvenile court's finding that ICWA does not apply and remand for full compliance with ICWA.

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

# FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. *Petition and Detention*

On February 2, 2022, the department took then one-week-old N.S. into protective custody because of mother's previous child welfare case in Los Angeles County, history of domestic violence and concerns about her ability to provide N.S. ongoing care because of her (mother's) special needs. Mother was not following the nurse's directions and feeding N.S. enough formula. N.S. was placed in foster care.

The department filed a petition pursuant to section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling) on N.S.'s behalf. Nathaniel S. was identified as N.S.'s alleged father. The parents completed Parental Notification of Indian Status forms (ICWA-020), denying any Indian ancestry. Mother provided the social worker information about extended family members.

Mother and Nathaniel appeared at the initial detention hearing on February 7, 2022. Mother's attorney asked for a continuance to determine whether mother needed a guardian ad litem (GAL). County counsel asked the juvenile court to question mother regarding N.S.'s Indian heritage. The court conducted a paternity inquiry and found Nathaniel was the biological father. The court reserved the issue of ICWA, issued a temporary order detaining N.S., and continued the hearing to February 9, 2022, to determine if mother needed a GAL.

On February 9, 2022, the juvenile court appointed a GAL for mother. The court received the parents' ICWA-020 forms and found ICWA did not apply because there was no reason to believe or know that N.S. was an Indian child. The court continued the detention hearing to February 16, 2022, so the GAL could familiarize herself with the case. On February 16, 2022, the court ordered N.S. detained and set the jurisdictional hearing for March 10, 2022.

---

[3]    Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

Beginning with N.S.'s detention, the family finding social worker began a search to locate relatives for placement purposes. The social worker spoke to the maternal grandmother, a maternal aunt and a paternal aunt. On March 18, 2022, the social worker closed the family finding portion of the case. She had identified 22 maternal and 17 paternal relatives, including children and deceased relatives.

### B. *Jurisdiction and Disposition*

The jurisdictional hearing was continued and conducted on March 25, 2022. The juvenile court found the allegations true and set a dispositional hearing, which was conducted on May 4, 2022. The court ordered N.S. removed from parental custody, denied the parents reunification services and set a section 366.26 hearing for August 31, 2022. Neither parent sought extraordinary writ review. (Cal. Rules of Court, rule 8.452.)[4]

### C. *Section 366.26 and Placement*

The juvenile court continued the section 366.26 hearing to October 5, 2022, at county counsel's request to inquire of the relatives located through the family finding process regarding ICWA. The results of the department's ICWA inquiry are not included in the appellate record. However, in a supplemental report filed for the hearing, the department informed the court that N.S.'s paternal aunt who lived in Minnesota was being assessment for placement.

On October 5, 2022, the court found N.S. was likely to be adopted and terminated parental rights. Mother filed a timely notice of appeal.

### DISCUSSION

### A. *ICWA and the Indian Child*

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of

---

[4] All further rule references are to the California Rules of Court.

minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture .…' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.)  Both ICWA and state law define an " 'Indian child' " as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a) [adopting federal definition].)

### B. *The Duty to Inquire and the Reason to Believe Versus the Reason to Know*

"Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*In re T.G.* (2020) 58 Cal.App.5th 275, 288.)  "[A]n adequate investigation of a family's belief a child may have Indian ancestry is essential to ensuring a tribe entitled to ICWA notice will receive it." (*Id.* at p. 289.)

"ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child.  Federal regulations implementing ICWA, however, require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.'  The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882–883.)

### 1.  Initial Inquiry

Section 224.2, subdivision (a) imposes an affirmative and continuing duty on the department to inquire whether a child for whom a petition under section 300 has been filed or may be an Indian child to inquire during the initial contact by asking the party reporting the child abuse or neglect whether the party has any information that the child

may be an Indian child.  If the child is placed in the temporary custody of the department, the department must inquire whether the child is an Indian child.  "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child and the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."  (§ 224.2, subd. (b).)  Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (§ 224.1, subd. (c).)

Section 224.2, subdivision (c) requires the juvenile court to ask each participant at their first appearance in the proceedings whether the participant knows or has reason to know that the child is an Indian child.  "The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child" (§ 224.2, subd. (c)) and require each party to complete an ICWA-020 form (rule 5.481(a)(2)(C)).

2.  Reason to Believe

If the initial inquiry gives the juvenile court or department a "reason to believe that an Indian child is involved," then their duty to "make further inquiry regarding the possible Indian status of the child" is triggered.  (§ 224.2, subd. (e).)  Further inquiry includes, but is not limited to interviewing the parents and extended family members to obtain the name, birth date and birthplace of the Indian child, all names known of the Indian child's biological parents, grandparents, and great-grandparents, including maiden, married, and former names or aliases, as well as current and former addresses, birth dates, places of birth and death, tribal enrollment information of direct lineal ancestors of the child and any other identifying information if known.  (§§ 224.2, subd. (e)(2) & 224.3, subd. (5)(A)–(C).)

6.

3. Reason to Know

Section 224.2, subdivision (d) sets forth six circumstances any one of which if satisfied establishes a reason to know the child is an Indian child. Those circumstances are as follows: (1) A person having an interest in the child, including the child, informs the court that the child is an Indian child; (2) the child, the child's parents or Indian custodian reside on a reservation; (3) any participant in the proceedings informs the court that it has discovered information indicating the child is an Indian child; (4) the child gives the court reason to know that the child is an Indian child; (5) the court is informed that the child is or has been a ward of a tribal court or (6) the court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe.

4. Duty to Know Requires Notice

"The duty to provide notice is narrower that the duty of inquiry. Although the duty of inquiry applies to every 'child for whom a petition under Section 300 … may be or has been filed' [citation], and the duty of further inquiry applies when there is a 'reason to believe that an Indian child is involved in a proceeding' [citation], the duty to provide notice to Indian tribes applies only when one knows or has a 'reason to know … an Indian child is involved,' and only 'for hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 884.)

An Indian tribe's determination that a child is or is not a member of, or eligible for membership in that tribe is conclusive. Information that the child is not enrolled, or is not eligible for enrollment in the tribe is not determinative unless the tribe also confirms in writing that enrollment is a prerequisite for membership under tribal law or custom. (§ 224.2, subd. (h).)

7.

5. Documentation of Inquiries is Required

Additionally, the department is required by the rules to document its inquiries. Rule 5.481(a)(5) provides, "The petitioner must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes."

6. ICWA Finding Implicates Reason to Know and Proper Inquiry

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child. If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (j).)

Since social workers have no duty under federal law to ask extended family members about possible tribal membership (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069), the error, if any, is an error of state law. (*Ibid.*)

*C. Standard of Review*

As recently set forth in our decision in *K.H.*, "[t]he juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' (§ 224.2, subd. (i)(2).) The court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply. [Citation.] This inquiry is essentially factual and, therefore, is reviewed for substantial evidence. [Citations.] Under this standard, 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported

8.

by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 601 (*K.H.*).)

"The juvenile court must also find a 'proper and adequate further inquiry and due diligence ….' (§ 224.2, subd. (i)(2).) While we review the court's factual findings on the second element for substantial evidence as well, we agree with [*In re*] *Ezequiel G.* [(2022) 81 Cal.App.5th 984] that, consistent with the reasoning in [*In re*] *Caden C.* [(2021) 11 Cal.5th 614], a hybrid standard of review is appropriate. (*Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) The inquiry is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602.)

9.

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.]  Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied.  [Citations.]  In this case, because we are confronted with an undeveloped record, the outcome is the same irrespective of the standards of review applied."  (*K.H.*, *supra*, 84 Cal.App.5th at p. 602.)

D. *The Department Failed to Conduct an Adequate Initial Inquiry and the Juvenile Court Erred in Finding ICWA Did Not Apply*

Here, the social worker asked mother and Nathaniel prior to the detention hearing whether they had any Indian ancestry.  They stated they did not.  They provided the same response in their ICWA-020 forms, which the juvenile court reviewed and accepted into evidence.  Based on their responses, the court found ICWA did not apply.  During the proceedings, the department had contact with the maternal grandmother, a maternal aunt and a paternal aunt in its efforts to place N.S. with a relative.  These relatives are extended family members that the department was required to interview regarding Indian ancestry under section 224.2, subdivision (b).  However, there is no evidence these relatives were asked about their Indian heritage.  In addition, the department identified other relatives whom county counsel wanted to question regarding ICWA.  The section 366.26 hearing was continued for that purpose.  However, the results of the department's ICWA inquiry are not included in the appellate record.  Either the department did not conduct the inquiry or did not document it.  In any case, according to the record before us, the department failed to satisfy its duty of inquiry.  As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the department conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion.

*E. The ICWA Error is Prejudicial and Reversible*

Because the failure in this case concerned the department's duty of initial inquiry, only state law is involved. "Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].) (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607.)

However, in *In re A.R.* (2021) 11 Cal.5th 234, the Supreme Court "recognized that while we generally apply a *Watson*[5] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation .…' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id*. at p. 609.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it

---

5  *People v. Watson* (1956) 46 Cal.2d 818.

to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 608)  Yet "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*Ibid.*)  Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court.  (*K.H.*, at p. 596.)

"[I]f the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609.)  Thus, " 'the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child [, under a standard *Watson* analysis].  The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination.  It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply.  Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this first step is critical if the rights of the rights of tribes under ICWA and California law are to be meaningfully safeguarded, as was intended by Congress and our state Legislature." (*Id.* at p. 591.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is

12.

generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.) Here, the department's inquiry, "fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law." (*Id*. at p. 620.) "Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation" and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes." (*Id*. at p. 611.) Therefore, the error in this case is prejudicial.

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivision (b) and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated. In all other respects, the court's order terminating parental rights is affirmed.